Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence MODIFIES in part and AFFIRMS in part the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement, admitted into evidence as Stipulated Exhibit #1, as
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant on 28 November 1995.
3. The defendant was self-insured on 28 November 1995.
4. Plaintiff's average weekly wage was $312.90 on 28 November 1995.
5. Plaintiff's medical records regarding this claim are admitted into evidence as Stipulated Exhibit #2. These include:
 1) Cape Fear Valley Medical Center and including the Industrial, Orthopaedic and Sports Therapy Center;
2) Fayetteville Family Medical Center;
3) Physician's Total Rehab;
4) Fayetteville Ambulatory Surgery Center;
5) Carolina Neurosurgical Services;
6) Pinehurst Rehabilitation Center;
7) Pinehurst Surgical Clinic;
8) American Works, Incorporated; and
9) Village Surgical Associates.
6. Plaintiff's employment and personnel records from defendant are admitted into evidence as Stipulated Exhibit #3.
7. Interrogatories and Answers from both parties are admitted into evidence as Stipulated Exhibit #4.
8. A videotape of a van driver, taken 26 July 1996, is admitted into evidence as Stipulated Exhibit #5.
9. The issues to be determined are whether plaintiff sustained a compensable occupational disease from her employment with defendant; and if so, what, if any, benefits is she entitled. Plaintiff has additionally requested attorney fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the competent evidence of record herein, the Full Commission adopts in part and modifies in part the Findings of Fact of the deputy commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of hearing before the deputy commissioner, plaintiff was a 54 year old female of German nationality who spoke English as her second language. Plaintiff had been employed by defendant as a part-time van driver from October, 1991 through April, 1992 and full-time from April, 1992 through 23 August 1996.
2. Plaintiff's duties as a van driver required her to transport disabled individuals in a large van. Plaintiff transported as many as twenty (20) persons per day to and from their homes and needed medical treatment. As many as eight (8) of the persons plaintiff transported per day were non-ambulatory and some were very obese. Much of the time, there was no one at home to assist plaintiff with transporting persons from their homes to the van.
3. Plaintiff had to operate the wheelchair lift on the van for the patients in wheelchairs. The vans plaintiff operated did not have automatic hydraulic lifts that unfolded the metal platform. Plaintiff had to manually raise and lower the heavy metal platform. The platform of the lift on the van plaintiff drove during the early portion of her employment was heavier than the one on the newer model that plaintiff drove through August 1996. Plaintiff had to manually push the patients in wheelchairs, some weighing in excess of two hundred fifty (250) pounds. Plaintiff would manually lower the heavy platform by pulling it down; push the wheelchair onto the platform; apply the wheelchair brakes; activate the lift after plaintiff and the wheelchair patient were on the platform; push the wheelchair patient into the van and operate a system of two pulleys and straps to secure the wheelchair in place. Plaintiff had to exert pressure with her hands in order to perform the tasks necessary to assist non-ambulatory patients onto and off the van and secure the wheelchair in place. Additionally, plaintiff also operated a lever inside the van to open and close the door for the ambulatory patients, which required her to use hand pressure. Plaintiff had to reverse the above described procedures when patients exited the van.
4. In approximately 1993, plaintiff began having problems with her hands and wrists hurting. Plaintiff reported these problems to her supervisor, Mr. Thompson.
5. Plaintiff was out of work from February, 1995 until July, 1995 for unrelated brain surgery due to an aneurysm. This surgery was performed by Dr. Bruce Jaufmann. Plaintiff returned to work on or about 9 July 1995 and worked until the end of September, 1995. Plaintiff then began to lose time due to a ganglion cyst. This cyst is the issue in Industrial Commission File Number 589257. No request for hearing has been filed in this matter and it is not an issue in this Opinion and Award.
6. Plaintiff returned to work in mid-November, 1995. On 28 November 1995, plaintiff was diagnosed with bilateral carpal tunnel syndrome by Jim Heine, a physician's assistant. Dr. Jaufmann, a neurosurgeon, confirmed this diagnosis.
7. As a result of plaintiff's job duties which required use of her hands in a forceful, pushing and pulling manner in pushing wheelchairs, closing the ramp on the back of the van, opening and closing the door of the van, using the pulley and locking device for securing wheelchairs, and using her hands for performing other duties related to operating the van and transporting patients; plaintiff sustained bilateral carpal tunnel syndrome. Nerve conduction tests performed in December, 1995, supported this diagnosis.
8. Plaintiff's employment with defendant placed her at an increased risk of contracting and aggravating bilateral carpal tunnel syndrome as compared to members of the public not so employed. The Full Commission places greater weight on the testimony of Dr. Jaufmann, plaintiff's treating physician, than the medical records of Dr. Mark Brenner who did an independent medical examination of plaintiff, with respect to causation and increased risk.
9. As a result of contracting carpal tunnel syndrome from her duties as a van driver for defendant, plaintiff underwent a right carpal tunnel release on 27 December 1995. Plaintiff improved after this right carpal tunnel release and underwent a left carpal tunnel release on 17 January 1996.
10. On 9 April 1996, Dr. Jaufmann placed a five pound lifting restriction on the use of plaintiff's left hand, noted that she was unable to efficiently use her right hand, recommended continued occupational therapy, and further indicated that plaintiff could return to work, light duty, within these restrictions on 15 April 1996. Dr. Jaufmann did not approve plaintiff to return to her former position as a van driver or to a custodian position.
11. Plaintiff presented her restrictions to defendant, but no light duty was provided. It was the defendant's policy to only provide light duty for accepted workers' compensation claims; defendant had denied plaintiff's claim.
12. Defendant terminated plaintiff from employment on 23 August 1996.
13. As a result of her carpal tunnel syndrome, plaintiff was unable to work or earn wages from 28 November 1995 through 24 August 1996.
14. On 25 August 1996, plaintiff began work as a security guard with Wackenhut Corporation. Daniel Grizzard was manager of operations of Wackenhut during the time plaintiff was there. Dr. Jaufmann approved the security guard job description for plaintiff.
15. Plaintiff originally worked for Wackenhut under an IBM contract where her supervisor was Rich Flies. Plaintiff's duties at IBM were to monitor a metal detector when employees leave the manufacturing site. Within a month, plaintiff transferred to security for Hannaford Grocery Stores. At Hannaford, plaintiff's duties were to patrol within the store and parking lot, provide a presence to deter theft, fill out a log and notify the store manager if a theft occurred.
16. Plaintiff was terminated from Wackenhut on 14 January 1997. Plaintiff was terminated for gross negligence in duty and failure to perform her duties. On 3 January 1997, plaintiff was standing and talking at the service desk when the store was robbed of approximately $400.00 of merchandise. A store video picked up the theft as well as plaintiff talking with her back to the area she was supposed to patrol. Another customer had to tell plaintiff of the theft. As a result of plaintiff's gross negligence in the performance of her duty, Wackenhut terminated her. Plaintiff's termination had nothing to do with her carpal tunnel syndrome. Plaintiff's offered excuse that her carpal tunnel syndrome prevented her from performing her duties as a security guard with Wackenhut is not accepted as credible based on the testimony of Daniel Grizzard and other credible evidence of record. Plaintiff did not report any difficulties performing her job due to her carpal tunnel to Mr. Grizzard, who was the proper person to whom to report any difficulties.
17. Plaintiff's average weekly wage at Wackenhut was $293.11 per week. This is $19.79 less than her pre-injury average weekly wage with defendant. Plaintiff's earnings at Wackenhut were indicative of her wage-earning capacity up to the date of her surgery.
18. Until the date of the close of the evidence in this case on 9 September 1997, plaintiff has remained unemployed.
19. Plaintiff's wage-earning capacity from 25 August 1996 through the date she became totally disabled as a result of her surgery on or about 17 March 1997 was $293.11 per week.
20. Plaintiff experienced increased pain, weakness and numbness in her right hand and sought treatment from Dr. Jaufmann on 17 March 1997. Dr. Jaufmann performed surgery on plaintiff's right hand where he found a large amount of scar tissue as a result of the previous carpal tunnel release. As a result of the scar tissue and second surgery, plaintiff became totally unable to work or earn wages beginning 17 March 1997.
21. At the time of Dr. Jaufmann's second deposition on 8 July 1997, plaintiff had not reached maximum medical improvement and had not received a permanent disability rating. There is no evidence from which to determine plaintiff's wage-earning capacity after her surgery.
22. Plaintiff's average weekly wage of $312.90 yields a compensation rate of $208.61.
23. This case was defended on reasonable grounds.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The contraction and aggravation of plaintiff's bilateral carpal tunnel syndrome were due to causes and conditions characteristic of and peculiar to her employment with defendant. Plaintiff's bilateral carpal tunnel syndrome is not an ordinary disease of life to which the general public, not so employed, is equally exposed, and is, therefore, an occupational disease. N.C. Gen. Stat. § 97-53(13).
2. As a result of her compensable bilateral carpal tunnel syndrome, an occupational disease, plaintiff is entitled to temporary total disability at the rate of $208.61 per week from 28 November 1995 through 24 August 1996 and for an undetermined period after 17 March 1997 when she became totally disabled due to surgery. N.C. Gen. Stat. § 97-29.
3. Plaintiff was capable of earning an average weekly wage of $293.11 per week from 25 August 1996 through 17 March 1997 and is entitled to temporary partial disability at the rate of $13.19 per week during this period.
4. Plaintiff is entitled to have defendant provide all medical treatment arising from her compensable occupational disease to the extent it tends to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
5. The amount of compensation due plaintiff after 17 March 1997 shall be reserved for subsequent determination as there is no evidence from which to determine to what extent plaintiff's surgery on or about 17 March 1997 affected her wage-earning capacity or increased her disability.
6. Plaintiff is not entitled to attorney fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff temporary total disability at a compensation rate of $208.61 per week from 28 November 1995 through 24 August 1996 and from 17 March 1997 through a period which shall be subsequently determined. Defendant shall pay to plaintiff temporary partial disability compensation at the rate of $13.19 per week from 25 August 1996 through 17 March 1997. All accrued amounts shall be paid in a lump sum, subject to an attorney fee approved in Paragraph 4.
2. The amount of compensation due plaintiff after 17 March 1997 shall be reserved for subsequent determination.
3. Defendant shall pay all medical expenses incurred or to be incurred in the future by the plaintiff as a result of her compensable occupational disease for so long as such examinations, evaluations and treatments tend to effect a cure or give relief when the bills for same have been submitted and approved through procedures adopted by the Industrial Commission.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff herein is approved for plaintiff's counsel and shall be deducted and paid directly to plaintiff's counsel.
5. Defendant shall pay the costs.
6. Defendant shall pay to plaintiff interest on the total compensation payable pursuant to this Award at the lawful rate of 8% beginning from the date of hearing before the deputy commissioner.
 ORDER
In the discretion of the Full Commission;
It is HEREBY ORDERED that plaintiff's motion for attorney's fees as a part of costs on appeal under N.C. Gen. Stat. § 97-88 is DENIED. It is FURTHER ORDERED that the parties shall submit to the Full Commission evidence on the extent of plaintiff's disability after 17 March 1997, including any increase in symptoms, physical restrictions or impairment that would affect her ability to earn wages after 17 March 1997. The Full Commission record is reopened for sixty days for receipt of this evidence. All correspondence shall be submitted to Bernadine S. Ballance, Commissioner.
 S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ______________________ THOMAS J. BOLCH COMMISSIONER
S/ ______________________ DIANNE C. SELLERS COMMISSIONER